**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT Of MARYLAND
Northern Division**

| | |
|---|---|
| **DAVID L. STEUERNAGLE, SR., et al.** | |
| **Plaintiffs,** | |
| **v.** | **Case No.: 1:25-cv-00350-JMC** |
| **OZARK MOTOR LINES, INC. et al.** | |
| **Defendants.** | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Currently pending before the Court is Defendants' Motion in Limine to Exclude the Testimony of Plaintiff's Causation and Damages Expert, Dr. Neal J. Naff. (ECF No. 28). Plaintiffs filed a timely Opposition. (ECF No. 34). The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Court will deny the motion, although such denial is without prejudice to Defendants re-asserting their challenge as a motion to strike at trial if Dr. Naff's trial testimony is insufficiently precise to be of assistance to the jury on the issues for which he is proffered.

## I.   BACKGROUND

This case involves a motor vehicle accident that occurred on July 26, 2022. In support of their claim, Plaintiffs designated and produced a report from Dr. Neal J. Naff, a neurosurgeon, to address issues of causation of damages relating to Plaintiff David Steuernagel, Sr.'s injuries. On July 16, 2026, Defendants Ozark Motor Lines, Inc. and Keisha Robinson filed a motion in limine seeking to exclude Dr. Naff pursuant to Federal Rule of Evidence 702 ("Rule 702") and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and its

progeny. (ECF No. 28). Defendants' motion primarily rests on the assertion that Dr. Naff fails to adequately differentiate between those damages attributable to an *earlier* motor vehicle accident that occurred on December 18, 2021 (the "prior accident") versus those attributed to the July 26, 2022 accident at issue in the case. *Id*. at 2.

## II.    ANALYSIS

Defendants are correct that under Rule 702 expert testimony may only be admitted if it is: (a) helpful to the trier of fact; (b) based on sufficient facts or data; (c) the product of reliable principles and methods; and (d) reliably applied to the facts of the case. *Daubert* made clear that, given the potential for expert testimony to hold outsized sway with the jury, a court must act as a gatekeeping to ensure expert testimony is both reliable and relevant. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). But as *Westberry* cautions, a court must remember that, notwithstanding its gatekeeping role, Daubert was intended to liberalize the standard for admission of expert testimony. *Id*. *Daubert* also reinforced the role of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" in allowing the jury to evaluate the weight of expert evidence. *Daubert*, 509 U.S. at 596. With those two somewhat competing concerns in mind, the Court analyzes Dr. Naff's report.[1]

Dr. Naff recognizes at the outset that Plaintiff was involved in two separate motor vehicle accidents (*i.e.*, December 18, 2021 and July 26, 2022) "each of which aggravated pain in his neck extending down his right arm." (ECF No. 28-1 at 24). Dr. Naff also acknowledges Plaintiff's neck and arm symptoms even before the December 2021 accident as demonstrated on a prior nerve conduction study performed on January 27, 2021 which showed "acute right C6 radiculopathy and

---

[1] Neither party had provided a deposition transcript for Dr. Naff, presumable because he wasn't deposed. That is, of course, Defendants' choice, but deposition questioning may have allowed a more definitive analysis, which now must await his trial testimony.

suggestion of mild median nerve entrapment at the wrist." *Id*. at 25    Additional studies were confirmatory of this prior history as he notes:

> An MRI of 01 /07/2021 demonstrates a right posterior disc protrusion at C6-7, right posterior disc osteophyte at C3-4, mild flattening of the anterior spinal cord at C5-6.    A CT of the cervical spine performed 01 /20/2021 demonstrated no acute abnormality, multilevel degenerative changes with severe neural foraminal stenosis."

*Id*.

In his assessment, after reviewing and comparing clinical history and MRI studies, Dr. Naff opines that Plaintiff, "sustained exacerbations of previously resolved pre existing cervical radiculopathy as a consequence of *both* accidents." *Id*. at 26 (emphasis added).    This wording is admittedly imprecise in isolation, but it quickly becomes clear that Dr. Naff is not saying that both accidents combined to cause the *same* injury that he cannot further apportion, but rather that Dr. Naff's opinion is that each accident had consequences, but those consequences were not the same. Dr. Naff continues, "He improved after the first accident, but then after the second accident the second exacerbation did not improve with conservative measures, thus necessitating surgery." *Id*. In support of his opinion that the July 2022 accident worsened Plaintiff's condition following the earlier December 2021 accident, Dr. Naff compares the two MRI studies performed after each accident (one on February 9, 2022  and one on October 25, 2022) and concludes, "Not only does the claimant's medical history and medical records document worsening of his cervical radiculopathy after each of the above accidents, the MRI of 10/25/2022 showed worsening pathology in comparison to the 02/09/2022 MRI, clearly indicating radiographic worsening of his condition." *Id*.

Based on this review, the Court cannot conclude that Dr. Naff conflates the two accidents. While it is true that he opines that Plaintiff suffered injuries in both accidents, and required

treatment after each, he also makes clear that, after improvement in his symptoms with conservative treatment after the first accident, Plaintiff's symptoms worsened after the accident at issue, did not improve with conservative measures, and necessitated the 2023 surgery. He reinforces this opinion by noting that the pathology demonstrated on the MRI after the first accident was worse on follow-up MRI after the second. As Plaintiffs notes in their Opposition, Dr. Naff also reviewed the medical records of Plaintiff's treating neurosurgeon, Dr. Maidoh, who similarly relied on worsening MRI and clinical findings to conclude that the 2023 was warranted. (ECF No. 34-1 at 3-4).

What Defendants posit as holes in Dr. Naff's analysis (e.g., other explanations for the MRI changes, whether the surgery might have ultimately been necessary anyway given Plaintiff's history of neck and arm symptoms, etc.) are instead appropriate topics for "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" as suggested in *Daubert*, 509 U.S. at 596.

## III.    CONCLUSION

Accordingly, Defendants' Motion in Limine (ECF No. 28) is DENIED without prejudice to re-asserting these arguments in a motion to strike following Dr. Naff's trial testimony if adequate grounds exist.

For the foregoing reasons, it is this 4 day of August 2026 ORDERED.

Date: <u>August 4, 2026</u>

_____/s/_____

J. Mark Coulson
United States Magistrate Judge
